UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT PIKEVILLE

CIVIL ACTION NO. 7:11-CV-050-KKC

TERRI HARMON, PLAINTIFF

v. **OPINION AND ORDER**

PAINTSVILLE HOSPITAL COMPANY, LLC
D/B/A PAUL B. HALL REGIONAL MEDICAL
CENTER. DEFENDANT

\* \* \*   \* \* \*   \* \* \*   \* \* \*

This matter is before the Court on the Plaintiff's motion to remand [DE 5]. The issue in this case is whether the Plaintiff's state law claims of wrongful discharge, defamation, and intentional infliction of emotional distress ("IIED") are preempted by Section 301 of the Labor Management Relations Act. These claims are not preempted and, accordingly, the motion to remand this matter to state court will be granted.

**I.   BACKGROUND.**

The Plaintiff originally filed this action in Johnson Circuit Court. In her Complaint, she asserts that the she was employed by the Defendant, Paintsville Hospital Company, LLC d/b/a Paul B. Hall Regional Medical Center (the "Hospital"), as a registered nurse.

She asserts that the Hospital fired her in retaliation after she informed the emergency department manager, as required by KRS § 216B.165, that a fellow nurse had been altering patient medical records and that physicians and other Hospital employees were violating federal drug laws. The Hospital, on the other hand, asserts that it

terminated the Plaintiff after it discovered that the number of hydrocodone pills (painkillers also known by the trade names Lortab and Vicodin) that were withdrawn from the Plaintiff's password-protected account greatly exceeded the number of pills that, according to the Plaintiff's records, she had administered to patients and the number that she was required to withdraw to fulfill her job duties. [DE 8, Response at 4].

The Plaintiff asserts three state law claims against the Hospital: (1) wrongful discharge, (2) defamation, and (3) IIED.

The Hospital removed the case to this Court pursuant to 28 U.S.C. § 1441 asserting that this Court has federal question jurisdiction under 28 U.S.C. § 1331. The Hospital asserts that the Plaintiff was a member of the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (the "Union") and that the terms and conditions of her employment were governed by the collective bargaining agreement ("CBA") between the Union and the Hospital.

The Hospital asserts that, because the CBA must be interpreted to resolve the Plaintiff's claims, her claims are preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). Thus, this Court has federal question jurisdiction over the Plaintiff's Complaint.

The Plaintiff moved the Court to remand this action back to Johnson Circuit Court asserting that she was not a member of the Union while employed at the Hospital and that, even if she was a Union member, her claims are not preempted by Section 301.

## II. ANALYSIS.

### A. The Plaintiff was a Union Member while Employed at the Hospital.

In her Motion to Remand, the Plaintiff argued that she was not a member of the Union while she was employed at the Hospital. In response, the Hospital argued that the Plaintiff was a Union member and cited supporting evidence. In her Reply brief, the Plaintiff does not address this argument at all. Thus, she appears to have abandoned it.

To the extent the Plaintiff still asserts that she was not a Union member while employed at the Hospital, that assertion must be rejected.

This Court is not bound, as the Plaintiff asserts in her Motion to Remand, by a statement in a September 14, 2010 order from the Kentucky Unemployment Insurance Commission that the Plaintiff was employed by the Hospital in "full time *non-Union* employment." [DE 5, Att. 1 (emphasis added)].

To the extent that this statement is a finding of fact by the Commission, this Court must give it the same preclusive effect to which it would be entitled in Kentucky's courts. *University of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986). *See also Lupo v. Voinovich*, 858 F.Supp. 699, 701 (S.D. Ohio 1994).

Pursuant to state statute, this statement by the unemployment commission would have no preclusive effect in Kentucky state courts. That statute provides as follows:

> No finding of fact or law, judgment, conclusion or final order made with respect to a claim for unemployment compensation under this chapter may be conclusive or binding in any separate or subsequent action or proceeding in another forum . . . .

KRS 341.420(5).

Both Kentucky state and federal courts have held that factual determinations made in Kentucky unemployment compensation hearings have no binding or preclusive

3

effect. *See Berrier v. Bizer*, 57 S.W. 3d 271, 280 (Ky. 2001); *Hicks v. Floyd County Bd. of Educ.*, 99 F. App'x 603, 605 (6th Cir. 2004). *See also Thomas v. Kmart Corp.*, 2006 WL 2802266, at *8 (W.D. Ky. 2006).

Secondly, the undisputed facts establish that the Plaintiff was a member of the Union and that the terms of her employment were governed by the CBA. The CBA expressly provides the Union is the sole exclusive bargaining agency for registered nurses such as the Plaintiff. (DE 1, Att. 2, Agreement, Art. III). The agreement provides that all employees shall become Union members. (DE 1, Att. 2, Agreement, Art. V). The Plaintiff paid union dues while employed at the Hospital. (DE 8, Att. 2, Trimble Aff. ¶ 3). Further, after the Hospital discharged her, the Plaintiff filed a Grievance pursuant to Article XXV of the CBA and the Union appeared at the Grievance hearing on the Plaintiff's behalf. [DE 8, Att. 2, Trimble Aff. ¶ 7; Att. 9, Grievance; DE 8, Att. 1, Elliott Aff.].

Thus, the Plaintiff was a member of the Union while employed at the Hospital and, accordingly, the terms of her employment were governed by the CBA.

**B.      Section 301 Preemption.**

The next question is whether the Plaintiff's state law claims are preempted by Section 301 of the LMRA which provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees. . .may be brought in any district court of the United States having jurisdiction of the parties…" 29 U.S.C. § 185(a).

The Supreme Court has determined that, in order to ensure that labor contracts are interpreted uniformly, "a suit in state court alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law." *Allis-*

4

*Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985). "[T]he preemptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'" *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983).

The preemptive force of Section 301 extends beyond contract claims to state-law tort claims. *Allis-Chalmers*, 471 U.S. at 217. The Sixth Circuit applies the following two-step test to determine if a state-law claim is preempted:

> First, courts must determine whether resolving the state-law claim would require interpretation of the terms of the [CBA]. If so, the claim is preempted. Second, courts must ascertain whether the rights claimed by the plaintiff were created by the [CBA], or instead by state law. If the rights were created by the [CBA], the claim is preempted. In short, if a state-law claim fails either of these two requirements, it is preempted by § 301.

*Mattis v. Massman*, 355 F.3d 902, 906 (6th Cir.2004) (citing *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216-17 (6th Cir.1994)).

As to the second step, with her wrongful discharge, defamation, and IIED claims, the Plaintiff does not seek to enforce any right created by the CBA and the Hospital does not argue that the Plaintiff's claims are preempted under this step of the inquiry.

The Hospital argues that the Plaintiff's claims are preempted under the first step of the inquiry. Under the first step, "[i]f the plaintiff can prove all of the elements of his claim without the necessity of contract interpretation, then his claim is independent of the labor agreement." *Decoe*, 32 F.3d at 216. In order to assess the Plaintiff's claims under this step, the court must look to the elements of each of the Plaintiff's claims.

5

1)   **The Wrongful Discharge Claim.**

As to the Plaintiff's wrongful discharge claim, under Kentucky law, there is a narrow exception to the "terminable at-will doctrine" which provides that "[a]n employee cannot be fired for refusing to violate the constitution or a statute." *Follett v. Gateway Regional Health System, Inc.*, 229 S.W.3d 925, 927 (Ky. App. 2007).

The Plaintiff asserts she was terminated for complying with KRS § 216B.165(1) which provides that an employee of a health care facility "who knows or has reasonable cause to believe that the quality of care of a patient, patient safety, or the health care facility's or service's safety is in jeopardy shall make an oral or written report of the problem to the health care facility. . . ."

The parties agree that, for her wrongful discharge claim, the Plaintiff must establish: 1) at a minimum that she was engaged in a statutorily protected activity; 2) that she was discharged, and 3) that the "protected activity" was "a substantial and motivating factor" for the discharge but for which the Plaintiff would not have been discharged. *Id.* at 929 (citing *Willoughby v. GenCorp, Inc.*, 809 S.W.2d 858, 861 (Ky.App.1990)).

In *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399 (1988), the Supreme Court determined that the elements of a retaliation claim like the Plaintiff's involved "purely factual questions" which involve "the conduct of the employee and the conduct and motivation of the employer" and did not require the Court to interpret the terms of the CBA. *Id.* at 407. Thus, the claim was not preempted.

The Court recognized that the defendant in that case would defend the claim by showing that it had a nonretaliatory reason for the discharge but the Court determined

6

that this was also a "purely factual inquiry [that] likewise does not turn on the meaning of any provision of a collective bargaining agreement." *Id*.

The Hospital argues that the retaliation claim in this case is preempted because the CBA and policies issued pursuant to the CBA must be analyzed to determine whether the Hospital *could* have discharged her for the reasons it has offered, i.e., the unexplained discrepancy between the number of pain pills withdrawn from the Plaintiff's password-protected and the number of pills that she had administered to patients. [DE 8 at 13].

But the Plaintiff does not dispute that the Hospital had a *right* to fire her for its asserted reasons under the CBA. If that were the Plaintiff's claim, then the claim would certainly be preempted. The basis of the Plaintiff's retaliation claim is that the Hospital did not *actually* fire her for its asserted reasons but instead fired her in retaliation for complying with KRS § 216B.165(1). As in *Lingle*, determining the real reason the Hospital fired the Plaintiff is a factual issue that will not require interpreting the CBA.

It is clear from the Plaintiff's defamation and IIED claims that the Plaintiff also argues that the Hospital's asserted reason for firing her had no basis in fact. This too is a factual issue that does not require consulting the CBA.

To the extent that the Hospital intends to point to a provision of the CBA to buttress its argument that it did fire the Plaintiff for its asserted reasons, "a defendant's reliance on a CBA term purely as a defense to a state law claim does not result in section 301 preemption." *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 800 (1990). Moreover, Section 301 only preempts claims that are "substantially dependant" on an interpretation of the CBA. *Id* It does not preempt claims that only "tangentially involve" CBA provisions. *Id*

In support of its argument, the Hospital cites *Beckwith v. Diesel Tech. Co.*, No. 99-1548, 2000 WL 761808 (6th Cir. 2000). In that unpublished case, the plaintiff also asserted a retaliatory discharge claim after she was fired for allegedly violating the employer's attendance policy which was contained in the CBA. *Id.* at *1, *3. In finding the claim preempted, the court noted that the employer's *defense* to the wrongful discharge claim would be that it fired her for failing to abide by the terms of the CBA. *Id.* at *3. Thus, the court concluded, to resolve the plaintiff's claim a court would have to interpret the CBA including the vacation policy. *Id.*

This focus in *Beckwith* on the employer's defense in resolving the preemption issue is at odds with the Sixth Circuit's clear pronouncement in *Fox* that a defendant's reliance on a CBA term purely as a defense to a state law claim does not result in section 301 preemption. 914 F.2d at 800. *See also Decoe*, 32 F.3d at 216. *See also Beatty v. United Parcel Service*, 267 F.Supp.2d 823, 832 n.11 (S.D. Ohio 2003)(noting the tension between *Beckwith* and Sixth Circuit and Supreme Court precedent holding that the focus of the court's preemption analysis should be on the plaintiff's theory, not the defendant's). Further, *Beckwith* is an unpublished decision and, thus, is not binding on this court. *See In re Miller*, 377 F.3d 616, 622 (6th Cir.2004); *Salamalekis v. Comm'r of Soc. Sec.*, 221 F.3d 828, 833 (6th Cir.2000). *See also Bell v. Johnson*, 308 F.3d 594, 611 & n. 7 (6th Cir.2002) ("It is well-established law in this circuit that unpublished cases are not binding precedent.").

The Hospital also cites *Kitzmann v. Local 619-M*, 415 F. App'x. 714 (6th Cir. 2011), *Jones v. General Motors Corp.*, 939 F.2d 380 (6th Cir. 1991), and *Ulrich v. Goodyear Tire and Rubber Co.*, 884 F.2d 936 (6th Cir. 189) in which the Sixth Circuit

8

held the plaintiffs' claims were preempted. However, none of these cases involved wrongful discharge claims. *Kitzmann* involved claims that the defendant actually breached Section 301 contracts. 415 F. App'x at 719. *Jones v. General Motors* involved a claim that the defendant breached a settlement agreement that the court noted was "wholly begotten by the CBA." 939 F.2d at 383. In *Ulrich*, the plaintiffs requested reinstatement and seniority rights upon reinstatement, both of which depended upon rights created by the CBA. 884 F.2d at 938.

This case involves a retaliation claim like that at issue in *Lingle*. For the reasons discussed, that claim can be resolved without interpreting the CBA and, thus, it is not preempted.

### 2) The Plaintiff's IIED and Defamation Claims.

As to the Plaintiff's IIED and defamation claims, the Plaintiff asserts that the Hospital defamed and libeled her by reporting to the Kentucky Board of Nursing that she had been terminated for diverting hydrocodone from the Hospital's AcuDose dispensing machine for her own personal use. [DE 1, Complaint ¶ 30].

Under Kentucky law, a plaintiff asserting an IIED claim must establish that 1) the wrongdoer's conduct was intentional or reckless; 2) the conduct caused emotional distress; 3) the resulting emotional distress was severe; and 4) the conduct was outrageous and intolerable. *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 788 (Ky. 2004).

There is no dispute that the first three factors do not require interpreting the CBA. The Hospital asserts, however, that determining whether its conduct was outrageous will require construing the CBA to determine if the Hospital was acting outrageously or

9

instead simply asserting a contractual right when it reported the Plaintiff to the nursing board.

In support of this assertion, the Hospital cites three Sixth Circuit cases in which the court held that the plaintiffs' IIED claims were preempted. In *Mattis v. Massman*, 355 F.3d 902 (6th Cir. 2004), the plaintiff employee alleged that he was harassed by his supervisor while employed by the defendant and that he was wrongfully terminated. *Id*. at 904. He asserted an IIED claim against his employer which, for purposes of the preemption analysis, the Sixth Circuit assumed was premised only on the alleged harassment. *Id*. at 908. As to the alleged harassment, the plaintiff asserted that the supervisor ignored the plaintiff's seniority rights in assigning him jobs, failed to train him properly, assigned him to the most strenuous jobs, prevented him from receiving his pay on time, reduced his vacation days, and punished the plaintiff for using the company phone. *Id*.

The Sixth Circuit noted that "a defendant has not acted outrageously where he has done no more than to insist upon his legal rights in a permissible way." *Id.* (citing *DeCoe*, 32 F.3d at 219). It further determined that "[w]ithout reference to the CBA, we could not possibly know whether [the supervisor] acted outrageously or was merely insisting on his legal rights as a supervisor charged with ensuring compliance with the rules of the factory." *Id*. The court recognized that Section 301 does not preempt all IIED claims but noted that the plaintiff's allegations all involved "workplace actions taken under the ostensible authority of the CBA." *Id*.

The Hospital also cites *Gilreath v. Clemons & Co.*, 212 F. App'x 451 (6th Cir. 2007) in which the plaintiff-employee asserted that he was terminated because he

10

reported work-site violations to the employer and to the union. *Id*. at 456. He asserted various claims against his employer and union including IIED. *Id*. at 457. The court noted that the plaintiff's claim was not based on any conduct taken by the employer or the union outside of the employer-employee or member-union relationship and that, instead, much of the plaintiff's claim was based on conduct that the employer or union took under the authority of the CBA. *Id*. at 463.

Finally, the Hospital cites *DeCoe*. In that case, the plaintiff asserted an IIED claim against his employer and co-employees after the co-employees filed claims asserting that the plaintiff had sexually harassed them. 32 F.3d at 214. The employer's sexual harassment policy was contained in the CBA and permitted employees to file complaints of sexual harassment. *Id*. at 215. The court determined that the plaintiff "in essence" was claiming the defendants exceeded their rights under the CBA to prosecute the sexual harassment claims. *Id*. at 216. The court concluded that the CBA had to be interpreted to determine whether the defendants acted outrageously in asserting sexual harassment claims or merely insisted on their legal rights under the agreement. *Id*. at 220.

In *O'Shea v. The Detroit News*, 887 F.2d 683 (6th Cir, 1989), in contrast, the Sixth Circuit ruled that the plaintiff's IIED claim was not preempted. In that case, the plaintiff asserted a claim as the personal representative of her husband's estate against her husband's former employer, *The Detroit News*. The plaintiff alleged that he was transferred to the midnight police beat in order to force him to retire. *Id*. at 685. She asserted various state law claims against the newspaper including IIED. *Id*. at 686.

The defendant argued that, if all it did was exercise its right to transfer an employee under the CBA, then the plaintiff's claim must fail. *Id*. The Sixth Circuit

rejected that argument citing *Lingle* and stating that "[t]he defendant can argue in defense that he had good cause under the contract, but this defense does not affect the fact that the plaintiff's claim is not based on the contract." *Id*. The court concluded "[i]t is irrelevant to the preemption question whether or not the employer can defend by showing it had the right under the [CBA] to do what it did. The plaintiff's claim stands separate from this defense." *Id.* (citation omitted).

This case is different from *Mattis* because, in this case, the Plaintiff's allegations with regard to her IIED claim do not involve workplace actions taken by the defendant as employer. This case is different from *Gilreath* because the Plaintiff's IIED claim is not based on any conduct the employer took under the authority of the CBA. Instead, the Plaintiff's claim arises from conduct by the Hospital that allegedly occurred after the employer-employment relationship was terminated.

This case is also different from *DeCoe*. In that case, the plaintiff's claim that the defendants wrongly asserted sexual harassment allegations directly implicated the CBA which contained a detailed policy regarding procedures employees should follow if they believed they had been subjected to sexual harassment. *Id*. at 215. Here, the Plaintiff's IIED claim is based on her allegation that the Hospital wrongfully reported her conduct to the Kentucky Nursing Board. There is no provision of the CBA that arguably governs the Hospital's right to take such actions.

The Hospital argues that Article I and XXVII of the CBA govern "whether the Hospital had the right to report Harmon's misconduct to the Kentucky Board of Nursing." [DE 8 at 3, 18, 19]. Article I broadly grants the Hospital rights with regard to the "operation, control, and management" of the Hospital and the "supervision, direction,

12

control and discipline of the working force" of the Hospital. Article XXVII deals with "Safety, Drugs, and Alcohol" and, among other things, prohibits employees from "using, possessing, distributing, manufacturing, selling, attempting to sell or purchase. . . illegal drugs. . . while on or off duty, while on the Hospital property or any Hospital work site."

Neither of these provisions arguably governs whether the Hospital had the right or obligation to report the Plaintiff's alleged conduct to the Nursing Board. The Plaintiff's IIED claim can be resolved without interpreting either of these provisions. Again, even if the Hospital intends to rely on these provisions as a defense to the IIED claim, Section 301 does not preempt claims where the defendant relies on the CBA only as a defense to a state-law claim.

Finally, the Hospital asserts that the CBA will have to be consulted on the Plaintiff's IIED claim because it had a duty to report the Plaintiff to the Nursing Board under KRS § 314.031 and that duty arose from the fact that it was the Plaintiff's employer. [DE 8, Response at 19]. KRS §314.031 provides that an employer must report to the Nursing Board a nurse who, among other things, is suspected of misusing or misappropriating any drugs placed in the nurse's custody. KRS 314.031(4)(h).

The Plaintiff's IIED claim certainly implicates this statute but that, of course, does not matter for the preemption analysis. The question is whether the CBA must be consulted to resolve the Plaintiff's claim. The Hospital argues the CBA must be consulted because the Hospital's duty under the statute arises from its duty as the Plaintiff's employer and the CBA establishes the employer-employee relationship. But, the Plaintiff does not dispute that the Hospital was her employer. Thus, any provision of the CBA that establishes an employer-employee relationship is irrelevant to the Plaintiff's IIED claim.

The Plaintiff's defamation claim is also premised on the allegation that the Hospital wrongfully reported her conduct to the Kentucky Nursing Board. To establish a defamation claim, the Plaintiff must prove: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Harstad v. Whiteman*, 338 S.W.3d 804, 810 (Ky.App.2011) (quoting the Restatement (Second) of Torts § 558 (1977)).

The Hospital argues that the CBA will have to be interpreted to determine whether the Hospital's report to the Kentucky Nursing Board was a privileged communication. [DE 8 at 19]. In support of this assertion, the Hospital cites *DeCoe*. Again, in that case, the plaintiff's claims were based on the fact that his former co-employees had filed claims asserting that he had sexually harassed them. 32 F.3d at 214.

The Sixth Circuit determined that the defamation claim was preempted because the CBA "imposed a duty" on the employer, the co-workers and the union to identify and resolve sexual harassment complaints. *Id*. at 217. The CBA further required that such complaints would be subject to grievance and arbitration procedures. The court determined that, in order for the plaintiff to establish that the publications were not privileged, these provisions of the CBA would have to be interpreted. *Id*.

The Hospital does not assert that any provision of the CBA governs whether its report to the Kentucky Nursing Board was a privileged publication. It asserts only that it will assert that the CBA and policies issued pursuant to it "permitted it to report nurse misconduct in order to comply with Kentucky law." [DE 8, Response at 21]. But, the

14

Plaintiff has not argued that the CBA prohibits the Hospital from complying with Kentucky law requiring the report to the Nursing Board. Thus, even if there are provisions of the CBA that specifically permit the Hospital to comply with Kentucky law, those provisions will not need to be interpreted in order to resolve the Plaintiff's defamation claim.

### III. CONCLUSION.

For all these reasons, the Court hereby ORDERS:

(1) that the Plaintiff's motion to remand [DE 5] is GRANTED;

(2) this matter is REMANDED to the Johnson Circuit Court and STRICKEN from the active docket of this Court.

Dated this 14th day of October, 2011.

Signed By:
*Karen K. Caldwell*
United States District Judge